UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 5:24-00112-01 |
| VERSUS | JUDGE DONALD E. WALTER |
| DALANDO T GARNER (01) | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM ORDER

Before the Court is a Motion to Dismiss Indictment filed by Defendant, Dalando T. Garner ("Garner"). See Record Documents 22 and 23. The United States of America ("the Government") filed an opposition to which Garner filed a reply. See Record Documents 24 and 25. For the reasons assigned below, Garner's motion is **DENIED**.

## BACKGROUND

Garner has four prior felony convictions: (1) Possession of 2nd Offense Marijuana (pled guilty on February 3, 2011); (2) Aggravated Battery (pled guilty on November 16, 2011); (3) Possession of a Firearm by a Convicted Felon (convicted in 2017); and (4) Attempted Possession of a Firearm (convicted in 2018). See Record Documents 25 and 26. On May 22, 2024, Garner was indicted in this Court with one count of being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1) ("Section 922(g)(1)"). See Record Document 1. Garner now moves to dismiss his single-count indictment, arguing Section 922(g)(1), as applied to him, violates his Second Amendment right to possess and use firearms. See Record Document 22. The Government opposes this motion, arguing Garner's prior felony convictions do not make Section 922(g)(1) unconstitutional as applied to him. See Record Document 24 at 2.

## **LAW & ANALYSIS**

**I.      Second Amendment Jurisprudence.**

The Second Amendment of the United States Constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court interpreted the Second Amendment to confer "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." D.C. v. Heller, 554 U.S. 570, 635, 128 S. Ct. 2783, 2821 (2008). The Supreme Court later recognized that the Second Amendment's protections extend to "an individual's right to carry a handgun for self-defense outside the home." New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 10, 142 S. Ct. 2111, 2122 (2022). However, the Second Amendment does not grant the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." Heller, 554 U.S. at 626, 128 S. Ct. at 2817. As with most constitutional rights, "the right secured by the Second Amendment is not unlimited." Id. The issue here is whether the application of Section 922(g)(1) to Garner is consistent with the Second Amendment.

In Bruen, the Supreme Court promulgated a test for determining whether a firearms regulation is consistent with the Second Amendment.[1] See Bruen, 597 U.S. at 17, 142 S. Ct. at 2126. "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." Id. Where a regulation impinges on conduct covered by the plain text of the Second Amendment, the Government "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." Id. This latter historical inquiry "will often involve reasoning by analogy." Id. at 28, 142 S. Ct. at 2132.

---

[1] The Supreme Court declined to adopt the two-step means-end scrutiny test that had gained popularity with the circuit courts following Heller. See Bruen, 597 U.S. at 17, 142 S. Ct. at 2125-26.

"[D]etermining whether a historical regulation is a proper analogue for any distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" Id. at 28-29, 142 S. Ct. at 2132. The central consideration for determining if a regulation is relevantly similar is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." Id. at 29, 142 S. Ct. at 2133. In other words, courts should consider "how and why the regulations burden a law-abiding citizen's rights to armed self-defense." Id. at 29, 142 S. Ct. at 2132-33.

This inquiry does not require the challenged modern regulation to have a "historical twin" or to "precisely match its historical precursors." United States v. Rahimi, 602 U.S. ----, 144 S. Ct. 1889, 1898 (2024). Further, "[e]ven when a law regulates arms-bearing for permissible reasons, . . . it may not be compatible with the right if it does so to an extent beyond what was done at the founding." Id. With these principles in mind, the Supreme Court in Rahimi turned to the constitutionality of 18 U.S.C. 922(g)(8)(C)(i)[2] and held that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment." Id. at 1903. The Supreme Court interpreted historical surety and going armed laws to confirm that "[w]hen an individual poses a clear threat of physical violence to another, the threatening individual may be disarmed." Id. at 1901. The Supreme Court then found those laws to be proper historical analogues for 18 U.S.C. § 922(g)(8)(C)(i) because that statute "applies to individuals found to threaten the physical safety of another." Id. Therefore, that provision was not unconstitutional as applied to Rahimi. See id. at 1903.

---

[2] Title 18 U.S.C. § 922(g)(8)(C)(i) temporarily "bars an individual from possessing a firearm if his restraining order includes a finding that he poses a 'credible threat to the physical safety' of a protected person." Rahimi, 144 S. Ct. at 1898 (quoting 18 U.S.C. § 922(g)(8)(C)(i)).

In <u>United States v. Diaz</u>, 116 F.4th 458 (5th Cir. 2024), the Fifth Circuit analyzed an as-applied challenge to the constitutionality of Section 922(g)(1).[3] See <u>Diaz</u>, 116 F.4th at 461. Because "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)," the Government must demonstrate that regulating the defendant's "possession of a firearm is consistent with the Nation's historical tradition of firearm regulation." <u>Id.</u> at 467 (internal quotation marks omitted). The Government satisfies this burden by identifying "a well-established and representative historical analogue" that is "'relevantly similar' to the challenged law." <u>Id.</u> (quoting <u>Bruen</u>, 597 U.S. at 29-30, 142 S. Ct. at 2132-33). This inquiry requires consideration of an individual defendant's pertinent criminal history,[4] and the Government survives an as-applied challenge by demonstrating "that the Nation has a longstanding tradition of disarming someone with a criminal history analogous" to the defendant's criminal history. <u>Diaz</u>, 116 F.4th at 467. Ultimately, the Fifth Circuit rejected Diaz's as-applied challenge because "laws authorizing severe punishments for thievery and permanent disarmament in other cases establish that our tradition of firearm regulation supports the application of § 922(g)(1) to Diaz." <u>Id.</u> at 471.

**II.      Analysis of Garner's As-Applied Challenge.**

The indictment charges Garner with Section 922(g)(1), which reads:

> (g) It shall be unlawful for any person –
>
> (1) who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year;

---

[3] In this opinion, the Fifth Circuit noted that <u>Bruen</u> rendered "obsolete" the prior cases affirming the constitutionality of Section 922(g)(1) and further acknowledged that the Second Amendment's protections extend to felons. <u>Id.</u> at 465-66.

[4] The relevant criminal history should not include charges that were dismissed, that were not punishable by a term of more than one year, or that were part of the underlying offense. See <u>Diaz</u>, 116 F.4th at 467.

4

> to ship or transport in interstate or foreign commerce, or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(1). As set forth in Diaz, "[t]he plain text of the Second Amendment covers the conduct prohibited by § 922(g)(1)." Diaz, 116 F.4th at 467. The burden thus shifts to the Government to demonstrate that the application of Section 922(g)(1) to Garner is "consistent with the Nation's historical tradition of firearm regulation." Id. Garner has four prior felony convictions: (1) Possession of 2nd Offense Marijuana; (2) Aggravated Battery; (3) Possession of a Firearm by a Convicted Felon; and (4) Attempted Possession of a Firearm. See Record Documents 25 and 26. Therefore, the Government must show that "the Nation has a longstanding tradition of disarming someone with a criminal history analogous" to Garner's. Diaz, 116 F.4th at 467.

The Government has demonstrated that at least one of Garner's predicate offenses are sufficiently analogous to founding-era laws. Garner's criminal history includes a conviction for possession of marijuana. No founding-era laws explicitly prohibit the possession of illegal drugs, but the Government need only identify a historical analogue, not a historical twin. The Government cites founding-era legislation that punishes the trafficking and possession of contraband. See Record Document 24 at 6-7. Acts such as trading stolen horses, stealing mail, and making or trading counterfeit or forged securities constituted capital crimes punishable by death.[5]

The "why" and "how" of these founding-era regulations demonstrate that Section 922(g)(1) "impose[s] a comparable burden on the right of armed self-defense" and that the "burden is comparably justified." Bruen, 597 U.S. at 29, 142 S. Ct. at 2133. "The purpose of capital

---

[5] See e.g. 6 William Waller Hening, The Statutes at Large; Being a Collection of All the Laws of Virginia from the First Session of the Legislature, in the Year 1619, 130 (1819); An Act to Establish the Post- Office and Post Roads within the United States, § 17 1 Stat. 232, 237 (1792); An Act for the Punishment of Certain Crimes Against the United States, §§ 115, 1 Stat. 112, 115 (1790)).

punishment in colonial America was threefold: deterrence, retribution, and penitence." Diaz, 116 F.4th at 469. Section 922(g)(1) similarly aims to "deter violence and lawlessness." Id. Just as the founding-era laws aimed to deter and punish the trafficking and possession of contraband, so too does the application of 18 U.S.C. § 922(g)(2) to Garner as it aims to punish and deter the possession of marijuana, a drug that can be likened to contraband. Further, "[p]ermanent disarmament under § 922(g)(1) does not punish such crimes 'to an extent beyond what was done at the founding,'" given that these founding-era laws punished the trafficking and possession of contraband with death.[6] Id. (quoting Rahimi, 144 S. Ct. at 1898).

Because there exists a sufficient historical analogue to at least one of Garner's predicate offenses, the Government has shown that Garner's indictment under Section 922(g)(1) is "consistent with the Nation's historical tradition of firearm regulation," and Garner's motion must be denied. Diaz, 116 F.4th at 467; see also United States v. Wilson, No. 22-238, 2024 WL 4436637, at *4-5 (E.D. La. Oct. 6, 2024) (finding that Section 922(g)(1) was constitutional as applied to a defendant with prior convictions for drug trafficking and possession and citing multiple cases throughout the country with similar holdings); United States v. Carter, No. 23-22, 2024 WL 4723236, at *6 (E.D. La. Nov. 8, 2024) (finding that Section 922(g)(1)was constitutional as applied to a defendant with prior convictions for drug trafficking, drug possession, and possession of a firearm by a convicted felon).

Although not necessary given the finding above, the Court further notes that Garner's prior conviction for aggravated battery likewise supports the constitutionality of Section 922(g)(1) as

---

[6] As set forth more fully in Diaz, the particular punishment of permanent disarmament imposed through Section 922(g)(1) finds a historical analogue in founding-era "going armed" laws, which imposed "permanent arms forfeiture as a penalty." Diaz, 116 F.4th at 470-71.

applied to him. The Government cites <u>Diaz</u>'s discussion of "going armed" laws.[7] See Record Document 24. The founding-era "going armed" statutes "authorized forfeiture of weapons as punishment" and "punished those who had menaced others with firearms." <u>Diaz</u>, 116 F.4th at 470-71 (internal quotation marks omitted). It was believed that this type of conduct "disrupted the public order and le[d] almost necessarily to actual violence." <u>Rahimi</u>, 144 S. Ct. at 1901 (internal quotation marks omitted). Based on those "going armed" statutes, the Fifth Circuit found that "[i]mposing permanent disarmament as a punishment is also within our Nation's history and tradition." <u>Diaz</u>, 116 F.4th at 471.

These "going armed" statutes constitute a historical analogue in this case. Those statutes authorized permanent disarmament where an individual threatened or menaced others "with dangerous or unusual weapons." <u>Rahimi</u>, 144 S. Ct. at 1901. In Louisiana, an individual is convicted of aggravated battery where he or she commits battery with a dangerous weapon. See La. R.S. § 14:34. Both the "going armed" statutes and the Louisiana aggravated battery statute target the improper use of dangerous weapons against another and aim to "deter violence and lawlessness." <u>Diaz</u>, 116 F.4th at 469. Importantly, both statutes punish and deter in the same way: permanent disarmament. Therefore, because there exists a sufficient historical analogue to Garner's predicate offense of aggravated battery, the Government has shown that Garner's indictment under Section 922(g)(1) is constitutional as applied to him, and Garner's motion must be denied. See also <u>United States v. Alexander</u>, No. 24:00188, 2024 WL 4805388 (W.D. La. Nov. 15, 2024) (finding that the application of Section 922(g)(1) to an individual with a prior felony

---

[7] <u>Diaz</u> discussed "going armed" laws when determining whether the punishment of permanent disarmament found support in our Nation's history and tradition and did not discuss those laws as an independent historical analogue for a particular crime. Nevertheless, those founding-era laws and the attendant discussions support this Court's finding that the "going armed" laws are a sufficient historical analogue in this case.

conviction for aggravated battery is constitutional and citing cases from other circuits reaching the same conclusion).

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Garner's Motion to Dismiss Indictment is **DENIED**.

**THUS DONE AND SIGNED** in Shreveport, Louisiana, this 18th day of November, 2024.

*[signature: Donald E. Walter]*

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE